# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 6107 | **DATE** | 08/09/2002 |
| **CASE TITLE** | Mejdreck, et al. v. Lockformer, etal. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

> Plaintiffs' Motion to Certify the Class (#14-1);
> Defendant's Motion to Dismiss Counts IV and V (#17-1)

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____.  Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial [set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the attached reasons, the Court GRANTS Plaintiffs' motion to certify the class (#14-1) and DENIES Defendant's motion to dismiss Counts IV and V (#17-1).   Enter Memorandum Opinion and Order.   Status hearing set for 8/29/02 at 9:15 a.m.

(11) [For further detail see order on the reverse side of the original minute order.]

| | | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | |
| | No notices required. | | number of notices | | |
| | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | AUG 1 2 2002 | | 34 |
| ✓ | Docketing to mail notices. | | date docketed | | |
| | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | | |
| JHC | courtroom deputy's initials | | date mailed notice | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | | |

THERESA MEJDRECK, DANIEL MEJDRECK, )
MARY BENO and MARK BENO, )
individually and on behalf of )
those persons similarly situated, )
)
    Plaintiffs, )
)   No. 01 C 6107
v. )
)   JUDGE WILLIAM J. HIBBLER
)
THE LOCKFORMER COMPANY, a division )
of MET-COIL SYSTEMS CORPORATION, a )
Delaware corporation, MET-COIL )
SYSTEMS CORPORATION, a Delaware )
corporation, MESTEK, INC., a )
Pennsylvania corporation, and )
HONEYWELL INTERNATIONAL, INC., a )
Delaware corporation, )
)
    Defendants. )

## MEMORANDUM OPINION AND ORDER

Theresa Mejdreck, Daniel Mejdreck, Mary Beno and Mark Beno

(collectively "Plaintiffs") have brought a claim individually, and

on behalf of a class of persons similarly situated, against The

Lockformer Company, a division of Met-Coil Systems Corporation, a

Delaware corporation ("Lockformer"); Met-Coil Systems Corporation,

a Delaware corporation ("Met-Coil"); Mestek, Inc., a Pennsylvania

corporation ("Mestek"); and Honeywell International Inc., a

Delaware corporation ("Honeywell") (collectively "Defendants");

pursuant to the Comprehensive Environmental Response Compensation

and Liability Act of 1980, as amended, 42 U.S.C. § 9601, et seq. ("CERCLA") and the Resource Conservation and Recovery Act, as amended, 42 U.S.C. § 6901 et seq. ("RCRA"). Plaintiffs also allege negligence, private nuisance, trespass, and willful and wanton misconduct.

The Court now has before it Plaintiffs' Motion to Certify Class filed pursuant to Fed. R. Civ. Pro. 23. For the reasons set forth below, the Motion to Certify Class is **GRANTED**.

The Court also has before it Honeywell's Motion to Dismiss Counts IV and V of Plaintiffs' Amended Complaint. For the reasons set forth below, the Motion to Dismiss is **DENIED**.

## BACKGROUND

The following facts are taken from Plaintiffs' Amended Complaint. Lockformer existed as an Illinois corporation from approximately December 6, 1946 until it merged into and became a division of Met-Coil on approximately October 27, 2000. Since approximately June 2000, Mestek has owned and operated Met-Coil.

At all relevant times, Lockformer has owned and operated a metal fabrication and manufacturing facility located at 711 Ogden Avenue, Lisle, Illinois ("Lockformer Property"). Met-Coil owns property adjacent to the Lockformer Property ("Met-Coil Property"). Plaintiffs reside in properties south and hydrologically downgradient from the Lockformer and Met-Coil Properties.

As part of the Lockformer Property and at all relevant times, Lockformer has maintained a metal degreasing system that included a pitted vapor degreaser located a few feet below ground surface. Beginning in 1968 and continuing through at least 1997, Lockformer utilized chlorinated solvents in the metal degreasing system, including trichloroethylene ("TCE"). The TCE was stored in a rooftop storage tank. Plaintiffs allege when the rooftop storage tank was filled, solvents, including TCE, spilled directly onto the ground via an overflow pipe that was part of the degreaser system. Plaintiffs allege the TCE migrated, and continues to migrate, in both liquid and vapor form, towards their homes and has contaminated the soil, groundwater and domestic water supply in the area.

Plaintiffs allege Lockformer has known about the release of TCE into the ground for many years, but has failed to investigate or remedy the problem or notify Plaintiffs of the potential harm. Plaintiffs allege the contamination was caused by Lockformer's failure to properly handle, store, use, and dispose of the TCE and other hazardous substances.

Plaintiffs seek to enjoin Defendants from allowing further contamination of their properties, require Defendants to abate the alleged health risk of such contamination, require Defendants to fully investigate and remediate the contamination of their

properties, require Defendants to reimburse them for costs they have incurred or will incur, and recover compensatory and punitive damages for the alleged damage to their properties.

The Court notes Judge Lienenweber's ruling in *LeClercq v. The Lockformer Company*, No. 00 C 7164, 2001 WL 199840 (N.D. Ill. Feb. 28, 2001) addressed many of the same interests, issues and parties that are before the Court today. Readers will therefore notice similarities, where appropriate, between the analysis below and the analysis set forth by Judge Lienenweber in *LeClercq*. While these similarities warrant recognition, the two cases remain independent from one another. Therefore, the Court has undertaken a complete and individualized evaluation of this case.

## I. PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Plaintiffs request an order to proceed as a class action. Plaintiffs assert the proposed class satisfies the requirements of Fed.R.Civ.P. 23. They further claim a class action is the appropriate tool for the adjudication of this action. The proposed class includes those persons who "own or reside in property in the area of the plume of contamination" and whose "property has been impacted, or a threat exists that it will be impacted, by hazardous substances released at or from the Lockformer and/or Met-Coil Properties." (Pls.' Am. Class Action Compl. ¶ 33).

Plaintiffs seeking class certification bear the burden of

4

proving the action satisfies the four requirements of Rule 23(a);
"the plaintiff must meet the prerequisites of numerosity,
commonality, typicality, and adequacy of representation."
*Harriston v. Chicago Tribune Co.,* 992 F.2d 697, 703 (7th Cir. 1993).
"All of these elements are prerequisites to certification; failure
to meet any one of these precludes certification as a class."
*Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596
(7th Cir. 1993); *Harriston*, 992 F.2d at 703. Where plaintiffs seek
class certification, the court should not consider the merits of
the case. *Retired Chicago Police Ass'n*, 7 F.3d at 598. Also, the
court takes all well-pleaded allegations to be true. *Eisen v.
Carlisle and Jacquelin,* 417 U.S. 156, 177 (1974). Once the
requirements of Rule 23(a) are met, the plaintiff must demonstrate
certification satisfies at least one of the subsections of Rule
23(b). *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977
(7th Cir. 1977). Here, Plaintiffs argue their claim satisfies all
three subsections. Finally, the plaintiff bears the ultimate
burden to establish that class certification is proper. *Retired
Chicago Police Ass'n*, 7 F.3d at 596. District courts then have
broad discretion in ruling on the plaintiff's request. *Mira v.
Nuclear Measurements Corp.,* 107 F.3d 466, 474 (7th Cir. 1997).

Defendants maintain Plaintiffs have failed to show the
proposed class has commonality, typicality and adequate

representation. Defendants' essentially argues there are so many differences between the proposed class members' properties that class certification is improper and, even if Plaintiffs could satisfy the requirements of Rule 23(a), Defendants argue that these differences defeat all of the subsections of Rule 23(b).

## A. RULE 23(a)

### 1. Numerosity

Rule 23(a)(1) requires that a class be "so numerous that the joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). Plaintiffs must provide some evidence or reasonable estimate of the number of class members. *Long v. Thornton Township High Sch. Dist. 205*, 82 F.R.D. 186, 189 (N.D. Ill. 1979). If Plaintiffs, however, are unable to provide exact numbers, a good faith effort is sufficient to establish the number of class members. *Id.*

In this case, the proposed class includes approximately 1,000 homes. Plaintiffs therefore estimate the number of persons included in the class would be 2,000 or more. Defendants do not raise any objections to the calculation or to Plaintiffs' assertion that this number is sufficient. The Court agrees and finds this number does satisfy the numerosity requirement of Rule 23(a)(1).

### 2. Commonality

Rule 23(a)(2) requires questions of law or fact common to the class must be present to sustain class certification. A "common

6

nucleus of operative fact" is generally sufficient to satisfy this second requirement. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). The fact some factual variation exists between the class members' claims will not preclude certification. *Id.* at 1017. A common nucleus of operative fact is usually found where the defendant has engaged in some standardized conduct toward the proposed class members. *Chandler v. Southwest Jeep-Eagle, Inc.*, 162 F.R.D. 302, 307 (N.D. Ill. 1995) (citing *Franklin v. City of Chicago*, 102 F.R.D. 944, 949-950 (N.D. Ill. 1984)).

Here, Plaintiffs allege Defendants allowed TCE to contaminate the soil, groundwater and property in the plume of contamination, i.e. the area where all proposed class members live. Plaintiffs allege this contamination constitutes standardized conduct towards all proposed class members and there are therefore common questions of law and fact.

Defendants argue there are enough differences within the proposed class that commonality is untenable.[1] They claim because some class members have wells while others do not, because some class members have basements while others do not, and because some class members have already tested negative for TCE, the proposed

---

[1] Mestek proffers an additional argument that it is not a proper defendant in this case. (*See* Mestek Inc.'s Memo. in Opp'n to Pls.' Mot. to Certify Class at 2). Specifically, Mestek argues it is only a parent company and is therefore unable to engage in any standardized conduct towards Plaintiffs. Mestek points out the Illinois E.P.A. and US E.P.A. have both omitted Mestek as a party to their proceedings. This argument, though, is more appropriate in a Motion for Summary Judgment and does not defeat the element of commonality.

class would not be able to prove the elements of their claims. None of the differences, though, are sufficient enough to overshadow the underlying questions of whether or not Defendants' conduct caused contamination of the area in question, and, if so, to what extent Defendants should be held liable. All class members, whether or not they have a well, a basement or have otherwise tested negative for TCE, allege Defendants should be held liable for TCE contamination and the effects of such on their property. For purposes of ruling on class certification, the characteristics of Plaintiffs need not be identical, so long as there is a "common nucleus of operative fact." *Rosario*, 963 F.2d at 1018. Here, the Court finds there is such a nucleus, and since commonality should be found where Defendants have engaged in some standardized conduct towards the proposed class members, the Court finds the commonality prong of Rule 23(a)(2) has been met. *See Chandler*, 162 F.R.D. at 307; *Johns v. DeLeonardis*, 145 F.R.D. 480, 483 (N.D. Ill. 1992) ("Where the defendant engages in a single course of conduct that results in injury to the class as a whole, a common core of operative facts is usually present.").

### 3. **Typicality**

A "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on

the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (citations and internal quotations omitted). Rule 23(a)(3) does not mandate each proposed class member suffer the same injury as the class representative. *Rosario*, 963 F.2d at 1018; *De La Fuente*, 713 F.2d at 232. Typicality may be found even in instances where "there are factual distinctions between the claims of the named plaintiffs and those of the other class members." *De La Fuente*, 713 F.2d at 232. Instead, a court looks to the defendant's conduct and the plaintiff's legal theory to satisfy Rule 23(a)(3). *Rosario*, 963 F.2d at 1018 (citing *De La Fuente*, 713 F.2d at 233).

The issue of typicality is closely related to that of commonality. *Rosario*, 963 F.2d at 1018. As such, Plaintiffs rely on the same commonality argument, i.e. their claims all focus on the same alleged misconduct by Defendants and are based on the same legal theories. Defendants also rely on their same commonality argument that the differences between the class members render class certification inapplicable. For the reasons set forth in the preceding section, the Court finds Plaintiffs' claims arise out of the same alleged misconduct by Defendants. Plaintiffs need not allege the same exact injury or be free of factual distinctions so long as their claims are based on the same legal theory, *De La Fuente*, 713 F.2d at 232; *Heastie v. Community Bank of Greater*

*Peoria*, 125 F.R.D. 669, 676 (N.D. Ill. 1989), which the Court finds they are here.

Defendants, though, go on to argue the differences between the class members preclude Defendants from using "unique defenses" for certain "subclasses" and "individual households." (Lockformer's Opp'n to Pls.' Mot. to Certify Class at 10). Defendants rely on *Burke* to assert typicality is defeated by these unique defenses. *Burke v. Local 710 Pension Fund*, No. 98 C 2723, 2000 WL 336518, at **3-4 (N.D. Ill. March 28, 2000) ("Colorable defenses unique to the named representative, or to a small subset of the plaintiff class, may render the claims sufficiently atypical of one another so as to 'destroy the required typicality of the class.'") (quoting *J.H. Cohn & Co. v. Am. Appraisal Assoc., Inc.*, 628 F.2d 994, 999 (7th Cir. 1980)). Defendants do not set forth what precise defenses they would proffer but insinuate, based on the differences between the class members' properties, Defendants could be liable to some class members but not liable to others. In *Burke*, though, the defendant had a very specific defense that the plaintiff was not a participant in the pension fund in question. *Burke,* 2000 WL 336518, at *4.

Here, Plaintiffs seek injunctive relief based on the common allegation that Defendants contaminated the groundwater, soil and wells in the plume of contamination. They specifically state they

10

are not seeking recovery for personal injuries. "Typicality will only be destroyed where the defenses against the named representatives are 'likely to usurp a significant portion of the litigant's time and energy,' and there is a danger that the absent class members will suffer if their representative is preoccupied with defenses unique to it." *Frietsch v. Refco, Inc.*, No. 92 C 6844, 1994 WL 10014, at *3 (N.D. Ill. 1994) (quoting *McNichols v. Loeb Rhoades & Co.,* 97 F.R.D. 331, 334-335 (N.D. Ill. 1982)). Based on the information provided by Defendants, the Court finds any unique defenses they would put forth would not be sufficiently burdensome to either side so as to defeat typicality. Therefore, the Court finds the element of typicality is satisfied.

#### 4. Adequacy of Representation

Rule 23(a)(4) mandates three elements for the adequacy of representation: (1) the class representative cannot have antagonistic or conflicting claims with other members of the class; (2) the class representative must have a "sufficient interest in the outcome to ensure vigorous advocacy;" and (3) counsel for the class representative must be competent, experienced, qualified and generally able to vigorously conduct the proposed litigation. *Chandler*, 162 F.R.D. at 308 (quoting *Riordan v. Smith Barney*, 113 F.R.D. 60, 64 (N.D. Ill. 1986)).

Defendants put forth two arguments that the representation in

this case is not adequate. First, Defendants point to the fact Plaintiffs' counsel is also representing the class of plaintiffs in *LeClercq*. Defendants concludes: (1) the failure of Dr. Roy Ball, an expert in the *LeClercq* case, to include some of this case's proposed class members in the plume of contamination is a potential conflict of interest; and (2) the recovery of damages in the *LeClercq* case would jeopardize a recovery in this case. Regarding Dr. Ball's inquiry, what Dr. Ball considered to be the plume of contamination was, according to documents provided by Defendants, an estimate. The proposed class members that fall outside the alleged plume do not fall far. Plaintiffs will certainly bear the burden at trial of establishing all class members are affected by the contamination. But, at this early point, the Court finds no reason to believe this alleged discrepancy should defeat Plaintiffs' adequacy of representation. Regarding Defendants' second point, Defendants offer no evidence an award for damages in the *LeClercq* case would render an award in the present case unattainable. At this time, the Court finds no reason to call into question Plaintiffs' adequacy of representation.

Second, Defendants claim Plaintiffs cannot adequately represent the proposed class because their wells tested below 5 ppb. As a result of these tests, the Illinois Department of Public Health ("IDPH") informed Plaintiffs the pollution did not  threaten

their health.  Defendants argue since there is no apparent threat to Plaintiffs' health, they have no claim under CERCLA or for nuisance or negligence.  Defendants then rely on *Bennett v. Roberts,* No. 96 C 6917, 2000 WL 781868, at *6 (N.D. Ill. June 15, 2000), to conclude Plaintiffs cannot represent a class if they do not have a meritorious claim.  In *Bennett*, though, the Court said only that a class representative must be a member of the class and must have suffered the same injury as the class.  *Id.,* at *6 (citing *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 161 (1982)).  Plaintiffs need only show  they *would* be entitled to relief, if granted, not that they *will* be entitled to relief.  The Court does not need to address the merits of the case, but only needs to decide whether or not Plaintiffs can adequately represent the proposed class.  *See Retired Chicago Police Ass'n*, 7 F.3d at 598.  As Plaintiffs point out, no members of the proposed class have test results above 5 ppb.  Therefore, Plaintiffs are entirely representative of their class.  Whether or not Defendants should be held liable for the level of TCE, regardless of how high or low it is, is a determination left to the factfinder.

The Court finds no other reason to question the adequacy of the class representatives or Plaintiffs' appointed counsel. Therefore, the Court finds Plaintiffs have satisfied the last element of Rule 23(a).

## B. RULE 23(b)

Since Plaintiffs have successfully met the requirements of Rule 23(a), the Court must determine whether they have satisfied one of the subsections of Rule 23(b). Although Plaintiffs maintain their cause of action satisfies all three subsections, the Court will begin by analyzing Plaintiffs' claim under Rule 23(b)(3). Under Rule 23(b)(3), Plaintiffs must show "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

"Considerable overlap exists between Rule 23(a)(2)'s commonality prerequisite and 23(b)(3). Rule 23(a)(2) requires that common issues exist; Rule 23(b)(3) requires that they predominate." *Demitropoulos v. Bank One Milwaukee, N.A.*, 915 F. Supp. 1399, 1419 (N.D. Ill. 1996). Additionally, a finding of commonality will likely satisfy a finding of predomination. *Heastie*, 125 F.R.D. at 677. Like the Rule 23(a)(2) standard, issues are considered to predominate when there is a "common nucleus of operative fact" among all the class members. *Halverson v. Convenient Food Mart, Inc.*, 69 F.R.D. 331, 335 (N.D. Ill. 1974).

Defendants argue Plaintiffs do not satisfy Rule 23(b)(3) because individual questions of fact predominate over questions

14

common to the entire class. Defendants support this proposition by putting forth much the same argument as they did regarding commonality and typicality: the proposed class members' properties are so different that it would be impossible to try this case as a class action, as issues of causation and damages would require individualized proof. Defendants primarily rely on the findings in *Thomas v. FAG Bearings Corporation*, 846 F. Supp. 1400, 1404 (W.D. Mo. 1994) and *Church v. General Electric Co.*, 138 F. Supp. 2d 169, 182 (D. Mass. 2001), and argue, in cases of contamination, issues of causation and damages predominate over the question of defendant's liability, and certification is therefore improper.

Plaintiffs claim the common question of whether Defendants contaminated the area in question is not only shared by all proposed class members, but predominates over any differences between the individual properties. *See Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988) (finding that a contamination case arises out of a single course of conduct by the defendants and class certification is therefore proper); *Fietsam v. Connecticut Gen. Life Ins. Co.*, No. 93 C 916, 1994 WL 323313, at *5 (N.D. Ill. June 27, 1994) (finding that common questions of law or fact will predominate when there is a common course of conduct that leads to injury of all the proposed class members); *Bates v. Tenco Services, Inc.*, 132 F.R.D. 160, 163-164 (D.S.C. 1990)

(finding that although there will be individualized questions of proof in a ground water contamination case, the common questions of whether or not there was contamination and whether or not the defendant should be liable predominate). The Court agrees this cause of action arises out of the same alleged course of conduct by Defendants and common questions predominate over individual ones.

Regarding the differences in the proposed class members' properties, "[i]t is very common for Rule 23(b)(3) class actions to involve differing damage awards for different class members." *De La Fuente,* 713 F.2d at 233; *see also Heastie*, 125 F.R.D. at 675 ("The necessity of answering individual questions after answering common questions will not prevent a class action.") This Court is satisfied that while differences in the proposed class members' properties would admittedly touch the calculation of damages, commonality predominates over these differences and class certification is proper. *See Sterling,* 855 F.2d at 1197 ("[T]he mere fact that questions peculiar to each individual member of the class remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible[.]")

Regarding the second prong of a Rule 23(b)(3) analysis, the Court may consider a number of factors in determining whether a class action is the superior means of adjudication. "These factors

include the interest of individual members in individually controlling the litigation, the desirability of concentrating the litigation in the particular forum, and the manageability of the class action." *Demitropoulos*, 915 F. Supp. at 1419. As discussed above, the core questions, i.e. whether or not and to what extent Defendants caused contamination of the area in question, will rely on the same proof. Therefore, it would be wholly inefficient to try thousands of separate cases that would allege the same misconduct and provide the same proof of such. *See, e.g., Bates*, 132 F.R.D. at 164; *Boggs v. Divested Atomic Corp.*, 141 F.R.D. 58, 67 (S.D. Ohio 1991). While monetary damages, if any, would likely need to be determined on an individual basis, the Court finds class certification is the most efficient and manageable way to proceed in an action against Defendants for injunctive relief and determining liability.

For the above reasons, the Court finds Plaintiffs have satisfied Rule 23(b)(3). Alternatively, the Court finds Plaintiffs have also satisfied subsections 23(b)(1) and (2). To satisfy Rule 23(b)(1), Plaintiffs must demonstrate "[t]he prosecution of separate actions by or against individual members of the Class" would create a risk of "inconsistent or varying adjudications" or adjudications for some members that would "be dispositive of the interest of the other members ... or

substantially impair or impede their ability to protect their interests." Fed.R.Civ.P. 23(b)(1). Since trying a thousand cases or more would likely lead to varying judgments here, Plaintiffs satisfy Rule 23(b)(1).

To satisfy Rule 23(b)(2), Plaintiffs must show Defendants have acted "on grounds generally applicable to the class, thereby making appropriate injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2). Where monetary relief is the primary goal, this rule should not be applied. *Orlowski v. Dominick's Finer Foods,* 172 F.R.D. 370, 375 (N.D. Ill. 1997). Defendants have not adequately demonstrated Plaintiffs' request for injunctive relief is only a ruse to cover up the overriding goal of monetary relief. Therefore, since Plaintiffs seek injunctive relief based on an allegation that Defendant engaged in a common course of conduct against them, Plaintiffs satisfy Rule 23(b)(2).

### III. HONEYWELL'S MOTION TO DISMISS
### COUNTS IV AND V OF PLAINTIFFS' AMENDED COMPLAINT

In ruling on a Motion to Dismiss, the Court must presume all well-pleaded allegations in Plaintiffs' Amended Complaint to be true. *Miree v. DeKalb County*, 433 U.S. 25, 27 n.2 (1977). Those allegations must be construed in a light most favorable to Plaintiffs. *Gomez v. Illinois State Bd. of Educ.*, 811 F.2d 1030,

1039 (7th Cir. 1987). A Motion to Dismiss should not be granted unless it appears beyond a reasonable doubt Plaintiffs could prove no set of facts that would support their claim and entitle them to relief. *Conley v. Gibson*, 355 U.S. 41, 45 (1957). The system of notice pleading does not favor dismissals for failure to state a claim. *Id.* at 45-46.

## A. COUNT IV

Count IV of Plaintiffs' Amended Complaint addresses Honeywell's alleged violation of certain regulations under RCRA, 42 U.S.C. § 6972(a)(1)(A). Honeywell seeks to dismiss Count IV and claim Plaintiffs did not comply with the notice and delay requirements set forth in 42 U.S.C. § 6972(a)(1)(A) and 40 C.F.R. § 254.3(a). These statutes state a potential plaintiff must provide notification of the alleged violation to the U.S. E.P.A., the state in which the alleged violation took or is taking place, and the perpetrator of the alleged violation. The potential plaintiff must then wait sixty days before filing a complaint. The purpose of these requirements is to allow the alleged perpetrator an opportunity to remedy the problem or, alternatively, to allow the U.S. E.P.A. or the state the opportunity to intervene. *See Evco Assocs., Inc. v. C.J. Saporito Plating Co.*, No. 93 C 2038, 1995 WL 571438, at *1 (N.D. Ill. Sept. 25, 1995).

19

Plaintiffs provided a notice letter and waited the requisite sixty days before filing their original complaint. Honeywell, though, complains the notice letter did not satisfy the statutory requirements. Under the statute, the notification must include "sufficient information" so the alleged perpetrator can "identify the specific permit, standard, regulation, condition, requirement, or order which has allegedly been violated." 40 C.F.R. § 254.3(a). Honeywell claims Plaintiffs' notice letter did not include sufficient information and Honeywell was unable to identify the alleged violation. Specifically, Honeywell argues while Plaintiffs claimed TCE was spilled from the aboveground storage tank, they failed to identify what RCRA provision that violated, and Honeywell does not bear the burden of guessing.

The standard of sufficient information, though, as interpreted by the Seventh Circuit, does not require a potential plaintiff to list the specific RCRA provision at hand, so long as the notice is sufficiently clear. *See Atlantic States Legal Found., Inc. v. Stroh Die Casting Co.,* 116 F.3d 814, 819 (7th Cir. 1997); *see also York Center Park Dist. v. Krilich*, No. 89 C 6000, 1993 WL 114628, at *3 (N.D. Ill. Apr. 13, 1993); *Evco Associates,* 1995 WL 571438, at *3. Plaintiffs' letter was sufficiently definite for purposes of informing Honeywell of the alleged violation. Plaintiffs' notice letter described in detail exactly what was perceived to be

the problem. "The sufficiency of the notice letter is to be judged on whether it provides enough information to enable the alleged violator to be able to bring itself into compliance." *Evco Assocs.*, 1995 WL 571438, at *3 (citing *Public Interest Research Group v. Hercules, Inc.*, 50 F.3d 1239, 1248 (3rd Cir. 1995)). Plaintiffs clearly complained  Defendants allegedly had spilled TCE, among other chemicals, out of the aboveground storage tank and into the ground, contaminating the soil, groundwater, and wells in the area.  Plaintiffs' detailed description of the alleged violations was sufficient enough that Honeywell could have come into compliance. *See Atlantic States Legal Foundation*, 116 F.3d at 819-20.

Although Plaintiffs do not specifically refer to an "*under*ground" system, they do refer to the degreaser system in reference to the spilled chemicals. The majority of the degreaser system is underground.  Therefore, Defendants' argument that a failure to use the word "*under*ground" points to the letter's insufficiency is unsupported by the facts.

For the reasons set forth above, Honeywell's Motion to Dismiss Count IV of Plaintiffs' Amended Complaint is denied.

### B. COUNT V

Count V of Plaintiffs' Amended Complaint alleges Honeywell "has ... or is contributing to the past or present handling,

storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to the health or to the environment." *See* RCRA, 42 U.S.C. § 6972(a)(1)(B). As under Section 6972(a)(1)(A) discussed in Count IV, Plaintiffs must provide a notice letter, although the delay requirement under this section is ninety days. Plaintiffs waited the requisite ninety days before they filed their original complaint and Honeywell's complaints about the notice letter are addressed in the preceding section.

The issue that Honeywell raises regarding Count V centers on the fact after the notice letter was dispersed, the State of Illinois brought suit against Lockformer and Honeywell seeking an injunction and civil penalties. An immediate and preliminary injunction was granted three days later. The order required Lockformer to supply bottled water to affected residents; to investigate and delineate the extent of TCE contamination, including installing numerous groundwater monitoring wells; to develop objectives for the clean-up of soil, surface water and groundwater contamination; to propose and implement the clean-up of any soil, surface water and groundwater contamination; to pay the Illinois EPA's oversight costs; and to ensure no more TCE was spilled. In their Amended Complaint, Plaintiffs request that Defendants be required to provide a safe water supply; investigate

22

and remediate the alleged contamination; and prevent any further spillage of TCE or other solvents.

The RCRA precludes a citizens' suit if a state or federal agency "commences and is diligently prosecuting enforcement proceedings" under Section 6972(a)(1)(B). *Evco,* 1995 WL 571438, at *1. Honeywell seeks to dismiss Count V on the basis that the suit brought by the State of Illinois, including the relief sought, mirrors Plaintiffs' case and Plaintiffs' case should be precluded. Even though Honeywell admits the State of Illinois did not bring its case under § 6972(a)(1)(B) (rather, under § 43(a) of the Illinois Environmental Protection Act, 415 ILCS 5/43(a) (2000)), the goal of avoiding duplicitous suits can only be met if citizens' suits are preempted by state suits seeking the same relief.

Plaintiffs, though, point to the language of the RCRA that precludes citizens' suits only when the state or federal agency brings suit *under the same section of the RCRA.* 42 U.S.C. § 6972(b)(2)(C). Therefore, Plaintiffs argue since the State of Illinois brought its case under the Illinois Environmental Protection Act, and not under the RCRA, the plain language of the RCRA allows Plaintiffs' claim to proceed, even given the admitted duplicity of the relief sought. *See Echternach v. D.H. Martin Petroleum*, No. 97 C 3802, 1997 WL 627646, at *3 (N.D. Ill. Sept. 30, 1997) ("While Congress could have been more direct in its

23

language, the language is not ambiguous in the least.") Plaintiffs point to the Clean Water Act, which specifically precludes citizens' suits when a state or federal agency has already brought suit under the Clean Water Act or under statutes *similar* to the Clean Water Act. *See* 33 U.S.C. § 3319(g)(6)(A) and (B). The Court agrees with the argument put forth by Plaintiffs and supported by *Echternach*. *See also Kara Holding Corp. v. Getty Petroleum Mktg., Inc.*, 67 F. Supp. 2d 302, 307 (S.D.N.Y. 1999) ("Given the language of section (b)(2)(C)(i), [the state's] action must also specifically press claims under RCRA."); *Goe Eng'g Co. v. Physicians Formula Cosmetics, Inc.*, No. CV 94 3576 WDK, 1997 WL 889278, at *8 (C.D. Cal. June 4, 1997) (finding that an action "must be taken under subsection (a)(1)(B)"). Although Defendants rightly point out these cases address the question of whether or not the state must bring a court action rather than an administrative action, the cases stand for the proposition that the language of the RCRA is clear and a variation in the state's compliance will nullify the preclusion of a citizens' suit.

Defendants rely mainly on the finding in *Hudson Riverkeeper Fund, Inc. v. Harbor at Hastings Assoc.*, 917 F. Supp. 251 (S.D.N.Y. 1996), that a citizens' suit under the RCRA is precluded when the state's action seeks the same relief, even if the state's action was not brought under the RCRA. Defendants argue the language of

the statutes in question and the relief sought are so similar in this case that the Congressional intent of avoiding duplicitous suits can be satisfied only by precluding Plaintiffs' case. In *Hudson*, though, the court recognized the language of the RCRA "seems to suggest that any state action, to qualify as barring the RCRA action, must be brought under the act itself." *Id.* at 256. The court found a citizens' suit was precluded because the state did not reference *any* statute as governing their complaint. *Id.* Therefore, the court found "it is impossible to say that any lawsuit arising out of an occurrence which implicates the RCRA is *not* being brought pursuant to the statute." *Id.* at 255 (emphasis in original). In this case, though, the Illinois EPA specifically brought its case under the Illinois Environmental Protection Act. Therefore, there is no ambiguity the Court needs to resolve and the Court finds that *Hudson* is not persuasive to overlook the plain language of the RCRA. *See No. CA River Watch v. Humboldt Petroleum, Inc.*, No. C 00 1329 VRW, 2000 WL 1639524, at **2-3 (N.D. Cal. Oct. 30, 2000) (rejecting the application of *Hudson* because the state action was clearly brought under state law and not under the RCRA).

Finally, the Court finds because discovery has not yet commenced, it is presumptive at this early stage to declare the relief sought by Plaintiffs in this case is exactly the same as the

relief sought by the State of Illinois.

If the State of Illinois finds it necessary or advisable to amend its complaint to include allegations under RCRA § 6972(a)(1)(B), it is free to do so. But, based on the above reasons and based on the facts as they currently stand, the Court finds Defendants' Motion to Dismiss Count V is denied.

## CONCLUSION

For the reasons noted herein, the Court finds Plaintiff has satisfied the requirements of Rule 23; therefore, Plaintiffs' Motion for Class Certification is **GRANTED**.

For the reasons noted herein, the Court finds Honeywell has not established Plaintiffs' notification letter was insufficient or that the State of Illinois' suit precludes a citizens' suit; therefore, Honeywell's Motion to Dismiss Counts IV and V of Plaintiffs' Amended Complaint is **DENIED**.

**IT IS SO ORDERED.**
**DATE**: August 9, 2002

_____
**Hon. William J. Hibbler**
**U.S. District Court Judge**