Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 6107 | **DATE** | 9/4/2003 |
| **CASE TITLE** | Theresa Mejdrech, et al vs. The Lockformer Company, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Defendants' Motion to Strike is DENIED, Defendants' Motion for leave to exceed page limits is GRANTED, and Plaintiffs' Motion for partial summary judgment is GRANTED IN PART AND DENIED IN PART.

(11) ■ [For further detail see order attached to the original minute order.]

| ✓ | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | SEP 05 2003 date docketed | 156 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | WAP | courtroom deputy's initials | 03 SEP -5 PM 8:20 Date/time received in central Clerk's Office | date mailed notice mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THERESA MEJDRECH, DANIEL MEJDRECH, MARY BENO, MARK BENO, individually, and on behalf of all persons similarly situated,<br><br>           Plaintiffs,<br><br>    v.<br><br>THE LOCKFORMER COMPANY, a division of MET-COIL SYSTEMS CORPORATION, a Delaware corporation, MET-COIL SYSTEMS CORPORATION, a Delaware Corporation, and MESTEK, INC., a Pennsylvania corporation, and HONEYWELL INTERNATIONAL, INC., a Delaware corporation,<br><br>           Defendants. | FILED<br>SEP 4 2003<br>JUDGE HARRY D. LEINENWEBER<br>U.S. DISTRICT COURT JUDGE<br><br>Case No. 01 C 6107<br><br>Hon. Harry D. Leinenweber<br><br>DOCKETED<br>SEP 0 5 2003 |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Theresa Mejdrech, Daniel Mejdrech, Mary Beno, and Mark Beno, individually and on behalf of a class of similarly situated persons (the "Plaintiffs" or the "Mejdrech Plaintiffs") filed this class action against The Lockformer Company ("Lockformer"), Met-Coil Systems Corporation ("Met-Coil"), Mestek, Inc. ("Mestek"), and Honeywell International, Inc. ("Honeywell") seeking to recover costs pursuant to Section 107(a) of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9607(a), and the Resource Conservation and Recovery Act, 42 U.S.C. § 6972(a), and asserting claims of

negligence, private nuisance, trespass, and willful and wanton misconduct. Plaintiffs have reached a settlement agreement with Lockformer, Met-Coil, and Mestek, leaving Honeywell as the only remaining defendant. Before the Court is Plaintiffs' Motion for Partial Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56, seeking a finding that the Lockformer property is the source of groundwater contamination in the Mejdrech class area. For the following reasons, Plaintiffs' motion is granted in part and denied in part. The Court finds that the Lockformer property is a source of contamination, but not the source.

## I. BACKGROUND

In October 2000, Lockformer merged into, and became a division of, Met-Coil, which in turn is a subsidiary of Mestek. Lockformer operates a manufacturing facility located at 711 Ogden Avenue in Lisle, Illinois (the "Lockformer Site") and Met-Coil owns property (the "Met-Coil Site") adjacent to, and immediately west of, the Lockformer Site. Both the Lockformer Site and the Met-Coil Site are north of the properties owned and/or inhabited by Plaintiffs (the "Mejdrech Class Area").

At all relevant times, Lockformer manufactured metal parts at the Lockformer Site. As part of that operation, Lockformer maintained a metal degreasing system, owned and operated by Honeywell, that utilized chlorinated solvents, including trichloroethylene ("TCE"). Plaintiffs allege that, beginning in

1969 and continuing at least through 1997, Lockformer stored TCE in a rooftop storage tank on the Lockformer Site and that when the rooftop tank was filled, solvents, including TCE, spilt directly onto the ground. Plaintiffs contend that those solvents subsequently migrated, and continue to migrate, in liquid and vapor form, toward the Plaintiffs' homes, contaminating the soil, groundwater, and domestic water supply in the area. Plaintiffs further allege that the releases, spills, and migration of hazardous substances resulted from the improper handling, storage, use, disposal, investigation, and cleanup of those substances, and from improper maintenance and operation of the equipment that used TCE and other hazardous substances.

Plaintiffs' allegations in this case are substantially the same as those made by the class plaintiffs (the "LeClercq Plaintiffs") in a prior Lockformer contamination case, *LeClercq v. Lockformer*, No. 00 C 7164, that was filed in this Court. The Lockformer and Met-Coil Sites are located directly north of the class area in *LeClercq* (the "LeClercq Class Area"), which in turn lies directly north of the Mejdrech Class Area. The LeClercq Plaintiffs brought a motion for partial summary judgment against Lockformer, Met-Coil, Mestek, and Honeywell seeking a limited finding that the Lockformer Site is the source of the LeClercq Class Area groundwater contamination. On May 6, 2002, the Court granted the LeClercq Plaintiffs' motion and held that no reasonable

jury could return a verdict in favor of Defendants finding that Lockformer was not the source of the TCE in the LeClercq Class Area groundwater. *LeClercq v. Lockformer Co.*, No. 00 C 7164, 2002 WL 907657 (N.D. Ill. May 6, 2002). The Court clarified in open court on May 22, 2002, that the LeClercq Plaintiffs had established by a preponderance of the evidence that the Lockformer Site was *a* source of the contamination. The *LeClercq* case progressed to trial, but the parties settled prior to the conclusion of trial.

Like the LeClercq Plaintiffs, the Mejdrech Plaintiffs now move for partial summary judgment, seeking a finding that the Lockformer Site is the source of groundwater contamination in the Mejdrech Class Area.

## II. **LEGAL STANDARD**

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is "material" if it could affect the outcome of the suit under the governing law; a dispute is "genuine" where the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The burden is initially upon the movant to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323 (1986). In assessing the movant's claim, the court must view all the evidence and any reasonable inferences that may be drawn from that evidence in the light most favorable to the nonmovant. *Miller v. Am. Family Mut. Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000). Once the moving party has met its burden, the nonmoving party "may not rest upon the mere allegations" contained in its pleading, but rather "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Becker v. Tenenbaum-Hill Assoc., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989).

### III. **DISCUSSION**

#### A. Defendants' Motion to Strike and Motion for Leave to Exceed Page Limits

Defendants move to strike Plaintiffs' Local Rule 56.1 Statement of Undisputed Material Facts ("Statement of Facts") in its entirety. Defendants contend that the Statement of Facts contains inadmissible assertions and impermissible argument and fails to satisfy the "concise" requirement of Local Rule 56.1. In reaching its ruling, the Court has disregarded any inadmissable portions of Plaintiffs' Local Rule 56.1 submissions. Pursuant to Federal Rules of Evidence 407 and 408, this includes all evidence related to settlements, settlement negotiations and subsequent remedial measures. Defendants' Motion to Strike is denied.

Defendants' Motion for Leave to Exceed Page Limits Pursuant to Local Rule 7.1 is granted. The Court reminds Plaintiffs, whose lengthy reply brief complied with neither the requirements of Local Rule 7.1 nor the requirements of Local Rule 5.2(a)(2), that documents not complying with these rules may be stricken.

### B. Motion for Partial Summary Judgment

Plaintiffs contend that there is no genuine issue of material fact as to whether the Lockformer Site is the source of TCE bedrock groundwater contamination in the Mejdrech Class Area. As the Court explained in *LeClercq*, 2002 WL 907657, at *2, Plaintiffs need not establish that TCE from Lockformer, to the exclusion of all other sources, caused the contamination in the Class Area. Imposition of CERCLA liability merely requires a finding that it is more likely than not that the release or threatened release of hazardous substances from Lockformer occurred, and that the release caused Plaintiffs to incur response costs. *See Nutrasweet Co. v. X-L Engineering Corp.*, 933 F.Supp. 1409, 1420 (N.D. Ill. 1996), *aff'd.*, 227 F.3d 776 (7th Cir. 2000); *Dedham Water Co. v. Cumberland Farms Dairy Inc.*, 889 F.2d 1146, 1154 (1st Cir. 1989)(stating that "every court that has addressed this issue . . . has held that it is not necessary to prove actual contamination of plaintiff's property by defendant's waste in order to establish liability under CERCLA . . . [N]or is there anything in the statute suggesting that a 'two-site' case be treated differently than a one-site case,

where the issue is whether a release or threat of release caused 'response costs'").

Plaintiffs' evidence that TCE was released at the Lockformer Site and migrated to the Mejdrech Class Area groundwater is substantial. Given that Defendants' evidence raises genuine issues of material fact that there are other sources for the Mejdrech contamination, however, the Court cannot at this time find that Lockformer is the sole source of the contamination.

### 1. *Plaintiffs' Evidence*

According to Plaintiffs' Expert Roy O. Ball ("Ball"), in 1969, the Lockformer Company installed a 500-gallon roof-mounted tank at the Lockformer Site for the storage of TCE. Based on deposition testimony, purchase summary notes, and shipping orders, Ball contends that over the next twenty-five years, Lockformer received approximately 90,000 gallons of TCE at the facility. He asserts that between 1969 and 1985, more than 6,000 gallons of TCE were lost either via the TCE tank vent pipe or directly from Honeywell's delivery truck. Since fresh TCE weighs more than twelve pounds per gallon, Ball estimates that more than 70,000 pounds of pure TCE were released to the environment on the northern section of the Lockformer Site. According to Ball, such releases resulted in contamination of the bedrock aquifer by TCE in the form of dense, non-aqueous phase liquid ("DNAPL") and in contamination of the shallow ground water.

Plaintiffs adduce significant evidence that the contaminated groundwater from the Lockformer Site migrated in a south/southeasterly direction, first contaminating the groundwater in the LeClercq Class Area and eventually contaminating the groundwater in the Mejdrech Class Area:

1. The United States Environmental Protection Agency has concluded that the TCE in the surface soil and subsurface soil at the Lockformer Site had migrated and will continue to migrate to the bedrock aquifer, and that the ground water flow in the area was south/southeast;

2. According to Ball, numerous water level sampling events conducted by Lockformer's own consultant, Clayton Group Services, show bedrock groundwater flow in a south/southeast direction;

3. Stanley Komperda, the Illinois Environmental Protection Agency ("IEPA") Site Manager, also testified that groundwater flow data obtained by the IEPA, some of which was generated by Lockformer, shows the regional flow of the bedrock groundwater going to the south/southeast. He testified that TCE concentrations decrease as one moves further south away from the Lockformer site, through the LeClercq Class Area and down to the southern portion of the Mejdrech Class Area;

4. Ball asserts that there are no engineered or geologic impediments that prevent contaminated ground water from the Lockformer Site from flowing through the LeClercq Class Area and directly into the adjacent Mejdrech Class Area. Indeed, Ball explains that environmental testing done by Lockformer and the IEPA has shown an uninterrupted flow of TCE contaminated

groundwater from the Lockformer Site through the LeClercq and Mejdrech Class Areas. Ball opines that the points of maximum TCE concentration throughout the Mejdrech Class Area are in alignment with the centerline for the LeClercq Class Area and that the combined centerlines point to a source on the Lockformer Site;

5.  Ball also explains that the highest TCE concentrations were detected near the center of the Mejdrech Class Area and that the concentrations decrease to the west or east of this centerline. Ball states that this pattern of contamination is inconsistent with any source located in the Ellsworth Industrial Park.

## 2. Defendants' Evidence

Defendants assert that they have new data that indicates that the TCE contamination in the LeClercq Class Area was caused by non-Lockformer sources, including leakage from the Downers Grove Sanitary District effluent pipeline, leakage from St. Joseph's Creek, and other potential sources, such as domestic septic tanks and the Village of Lisle sanitary sewer line. They also contend that the contamination in the Mejdrech Class Area came from sources other than the Lockformer Site, including the Ellsworth Industrial Park.

Plaintiffs argue that the principles of collateral and judicial estoppel bind the Defendants to their admissions in the *LeClercq* case that the Lockformer Site was the source of the groundwater contamination in the LeClercq Class Area. The doctrine of judicial estoppel prevents a party that has prevailed in an

earlier case by adopting a proposition from repudiating that proposition in a subsequent case. *Kale v. Obuchowski*, 985 F.2d 360, 361 (7th Cir. 1993). Judicial estoppel would only be applicable here if Defendants had prevailed in the *LeClercq* case by asserting that they were the source of groundwater contamination. While judicial estoppel may be applicable even when parties have settled, the settlement must represent some triumph or clear capitulation. *Id.* at 362. There is no indication in this case that Defendants were the clear victors in the settlement agreement or that they obtained settlement on the basis of admissions regarding the source of the TCE. *See McNamara v. City of Chicago*, 138 F.3d 1219, 1225 (7th Cir. 1998).

Collateral estoppel, on the other hand, is applicable in this case. The doctrine, however, binds Defendants to the Court's finding that the Lockformer Site was *a* source of TCE contamination in the *LeClercq* class area. It does not, as Plaintiffs contend, bind Defendants to their prior statements that Lockformer was *the* source.

Collateral estoppel applies when: 1) the issue that a party seeks to preclude is identical to an issue involved in a prior action; 2) the issue was actually litigated in the prior action; 3) determination of the issue was essential to the final judgment in the prior action; and 4) the party precluded from relitigating the issue was represented in the prior action. *Tate v. Showboat Marina*

*Casino P'ship*, 250 F. Supp. 2d 958, 960 (N.D. Ill. 2003). Collateral estoppel may not be applied when there is a change in the controlling facts or applicable legal rules. *Coleman v. C.I.R.*, 16 F.3d 821, 830 (7th Cir. 1994). In the *LeClercq* action, the Court granted Plaintiffs' similar motion for partial summary judgment and found that the Lockformer Site was a source of the contamination found in the LeClercq Class Area. The issue was actually litigated, it was essential to the order on partial summary judgment, which was a final order for purposes of collateral estoppel, *Tate*, 250 F. Supp. at 960, and Defendant was represented in the prior action.

Defendants argue that the application of collateral estoppel would be fundamentally unfair due to factual developments since the Court's partial summary judgment ruling in *LeClercq*. Defendants fail to specify what these factual developments might be, however, only referring vaguely to "factual developments described above." Plaintiffs cannot be expected to rebut such vague allegations and the Court will not search through the brief to discern which facts have changed since the *LeClercq* ruling. As the Seventh Circuit so memorably established, "Judges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). Accordingly, the Court finds that Defendants are collaterally estopped from arguing that Lockformer was not a source of the contamination at the LeClercq Class Area.

This determination obviously affects the admissibility of some of Defendants' evidence. The remaining evidence that Defendants may introduce, however, is sufficient to raise genuine issues of material fact as to whether Lockformer is the sole source of contamination in the Mejdrech Class Area. While the Court has granted Plaintiffs' motion to bar the opinions and testimony of Dr. Neil Sturchio, who was retained by Defendants to compare the chemical makeup of volatile organic compounds found in the Class Areas with the TCE found on the Lockformer Site, Defendants offer the findings of a second expert, John A. Connor ("Connor"), to support their contentions that the Mejdrech contamination came from non-Lockformer sources.

Connor serves as Defendants' expert on soil and ground water conditions in the vicinity of the Lockformer facility. Defendants are estopped from introducing several of his stated opinions, including that groundwater impacts of TCE solvent at the Lockformer Site are confined to the vicinity of the Lockformer property and have not impacted groundwater at the LeClercq Class Area. Defendants are also estopped from introducing several points that Connor makes to support this opinion, including that:

1. affected soils and groundwater associated with fill pipe releases on the Lockformer Site show no off-site migration;

2. a hydraulic mound in the Downers Grove Sanitary District pipeline corridor, which runs due south of Lockformer, prevents southern groundwater flow from

>              Lockformer to the LeClercq Class Area via
>              the sand-gravel groundwater unit; and
>
> 3.   there is an inconsistent chemical
>      composition and concentration of affected
>      groundwater in the LeClercq Class Area
>      compared with the groundwater associated
>      with Lockformer Site sources.

Connor offers other admissible opinions however. For example, he opines that the groundwater contamination in the LeClercq Class Area could have emanated in part from St. Joseph's Creek. He also points to the Downers Grove Sanitary District pipeline as a source of contamination, and notes that pipeline inspection indicates significant holes and other damage in the section south of the Lockformer Site. Connor also suggests other potential sources of contamination, including domestic septic tanks and the Village of Lisle sanitary sewer line. This is relevant in the instant case because, given the groundwater flow, contamination from these sources into the LeClercq Class Area could subsequently flow into the Mejdrech Class Area.

With respect to contamination at the Mejdrech Class Area, Connor opines that the source of such contamination was the Ellsworth area, not the Lockformer Site. While he acknowledges that the groundwater flow in the area was in a south/southeast direction, he contends that prior to 1996, two Citizens Utilities wells that operated on the western edge of the Mejdrech Class Area caused the groundwater to move in a west and southwest direction

beneath the Lockformer and Mejdrech areas and over parts of the Ellsworth Industrial Park.

Connor disagrees with Ball's opinion that DNAPL is present in the bedrock groundwater beneath the Lockformer Site and asserts that in the absence of a DNAPL source, the dissolved groundwater plume on the Lockformer Site is insufficient to cause a measurable impact on groundwater in the Mejdrech Class Area. He also argues that the chemical composition of affected groundwater in the LeClercq Class Area is inconsistent with the chemical composition of affected groundwater in certain portions of the Mejdrech Class Area. Connor contends that there are errors in the calculations and interpretation of hydrogeologic data that serve as the basis for Ball's opinions.

Not surprisingly, Plaintiffs reject all of Connor's findings. Plaintiffs especially decry Connor's municipal well theory which, they assert, has contaminated groundwater from the Ellsworth Industrial Park going against the established groundwater flow and up a hydrogeological hill, all the while "leap-frogging" over a clearly defined two-mile wall of non-detect wells that separates the Industrial Park from the Mejdrech and LeClercq Class Areas. Indeed, Plaintiffs contend that the Court's May 6, 2002 summary judgment opinion estops Defendants from claiming that westward-flowing groundwater carried contamination from the Ellsworth Industrial Park. However, the principles of collateral estoppel do

not apply when an issue was not actually litigated or when determination of that issue was not essential to the Court's final judgment. As the Court explained in its October 9, 2002 Memorandum Opinion and Order, there was no finding of fact in the *LeClercq* partial summary judgment ruling that TCE could not migrate either via groundwater or otherwise from the Ellsworth Industrial Park to the LeClercq Class Area. *LeClercq v. Lockformer Co.*, No. 00 C 7164, 2002 WL 31269491, at *3 (N.D. Ill., Oct. 9, 2002).

While Plaintiffs poke numerous holes in Connor's assertions regarding the source of contamination found in the Mejdrech Class Area, there are clearly factual disputes at issue in this case. Especially given the highly technical and scientific nature of some of these disputes, they should be developed and questioned at trial, and left to the finder of fact to resolve.

## CONCLUSION

For the reasons set forth above, Defendants' Motion to Strike is **DENIED**, Defendants' Motion for Leave to Exceed Page Limits is **GRANTED**, and Plaintiffs' motion for partial summary judgment is **GRANTED IN PART AND DENIED IN PART**.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Date: September 4, 2003