# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 6107 | **DATE** | 9/4/2003 |
| **CASE TITLE** | Theresa Mejdrech, et al vs. The Lockformer Company, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Plaintiffs' motion to bar the trial testimony of Dr. Neil Sturchio is GRANTED.
(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| ✓ | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | SEP 05 2003 date docketed | 157 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | WAP | courtroom deputy's initials | 03 SEP -5 PM 8:20 Date/time received in central Clerk's Office | date mailed notice mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

THERESA MEJDRECH, DANIEL
MEJDRECH, MARY BENO, MARK
BENO, individually, and on
behalf of all persons
similarly situated,

    Plaintiffs,

v.

THE LOCKFORMER COMPANY, a
division of MET-COIL SYSTEMS
CORPORATION, a Delaware
corporation, MET-COIL SYSTEMS
CORPORATION, a Delaware
Corporation, and MESTEK, INC.,
a Pennsylvania corporation,
and HONEYWELL INTERNATIONAL,
INC., a Delaware corporation,

    Defendants.

FILED SEP 4 2003
JUDGE HARRY D. LEINENWEBER
U.S. DISTRICT COURT JUDGE

Case No. 01 C 6107

Hon. Harry D. Leinenweber

DOCKETED
SEP 0 5 2003

## MEMORANDUM OPINION AND ORDER

Plaintiffs Theresa Mejdrech, Daniel Mejdrech, Mary Beno, and Mark Beno, individually and on behalf of a class of similarly situated persons (the "Plaintiffs") filed this class action against The Lockformer Company ("Lockformer"), Met-Coil Systems Corporation ("Met-Coil"), Mestek, Inc. ("Mestek"), and Honeywell International, Inc. ("Honeywell") seeking to recover costs pursuant to Section 107(a) of the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9607(a), and the Resource Conservation and Recovery Act, 42 U.S.C. § 6972(a), and asserting claims of negligence, private nuisance, trespass, and

willful and wanton misconduct. Plaintiffs have reached a settlement agreement with Lockformer, Met-Coil, and Mestek, leaving Honeywell as the only remaining defendant. Presently before the Court is Plaintiffs' motion to bar the trial testimony of Lockformer/Met-Coil expert Dr. Neil Sturchio ("Sturchio").

## I. **DISCUSSION**

Lockformer and Met-Coil retained Sturchio to perform an isotopic comparison between the chemical makeup of the volatile organic compounds found in the Mejdrech and LeClercq Class Areas and the TCE found on the Lockformer Site. Sturchio is a Professor of Geochemistry and Head of the Department of Earth and Environmental Sciences at the University of Illinois in Chicago ("UIC"). He is also the Director of the Environmental Isotope Geochemistry Laboratory at the UIC and a former Argonne National Labs Scientist. Despite these credentials, Plaintiffs contend that Sturchio's methods, report, and opinions are entirely unreliable and that, accordingly, he should be barred from testifying at trial pursuant to Federal Rule of Evidence 702 ("Rule 702") and the principles established in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

Sturchio compared the isotopic ratios of carbon (C) and chlorine (Cl) in soil and groundwater samples taken from the Lockformer Site, the Mejdrech Class Area and the LeClercq Class Area. Because the TCE groundwater concentrations were relatively

low, Sturchio used large water sample sizes to generate enough TCE mass for analysis. In his expert report and affidavit, Sturchio states that the isotopic analysis of C and Cl extracted from groundwater well samples in both the LeClercq and Mejdrech Class Areas indicated extremely low Cl isotope ratios compared to the TCE extracted from the soil samples on the Lockformer Site. Sturchio also asserts that the isotopic analysis of compounds extracted from groundwater well samples in the southeastern portion of the Lockformer property evidenced extremely low Cl isotope ratios compared to the TCE extracted from the soil samples below the fill pipe, the middle of the Lockformer Site and the southwestern corner of the property. He concludes that the differences in the Cl isotope ratios indicate that the TCE in the groundwater in the LeClercq and Mejdrech Class Areas did not originate from the Lockformer TCE source.

In his report, Sturchio claims that the only known source for TCE with such low Cl isotopes, such as those found in the Class Areas and in the southeastern portion of the Lockformer property, is from biodegradation of tetrachloroethylene or PCE. He identifies St. Joseph's Creek, the Downers Grove municipal sanitary sewer line, the Lisle sewer line, and Ellsworth Industrial Park as significant sources of PCE.

Recently, Sturchio has withdrawn his opinion that the chlorine isotope ratios measured from samples taken throughout the LeClercq

and Mejdrech Class Areas are consistent with TCE that originated from the biological degradation of PCE. Even before Sturchio recanted these findings, however, Plaintiffs questioned the reliability of his methods and opinions. Obviously, the recantation has significantly bolstered their arguments.

## A. Isotope Analysis Methodology

Given Sturchio's recantation, the only remaining sections in his report relate to his isotopic analysis of the groundwater samples taken from the LeClercq and Mejdrech Class Areas and the Lockformer Site. Plaintiffs contend that this methodology is not scientifically accepted and produced unreliable results.

Plaintiffs point first to Sturchio's admissions that, to his knowledge, the method he employed in analyzing the TCE had never been used before. Indeed, Sturchio admitted that he was "pushing the frontiers" of science when he used large water samples to overcome the relatively small concentrations of TCE.

Plaintiffs also rely on the opinions of their own expert, Dr. Ramon Aravena ("Aravena"), a research professor in the Department of Earth Sciences at the University of Waterloo, Canada. Aravena, whose articles on isotopic analysis are repeatedly cited in Sturchio's report, is one of six core professors on the board of the Environmental Isotope Laboratory at the University of Waterloo. Aravena has reviewed Sturchio's expert report, the documents produced by Sturchio and his lab, including documents relating to

the methodology Sturchio and his staff employed, the raw data Sturchio generated, and Sturchio's deposition transcripts.

Aravena describes Sturchio's methodology as one that "has never been demonstrated to be scientifically reliable for this application." He is unaware of any peer reviewed field studies that support Sturchio's methodology. Furthermore, because Sturchio required such large volumes of water for his analysis, he had to use multiple sample containers and multiple extractions per sample, which, in Aravena's opinion, "dramatically" increased the likelihood of sample contamination and made the analysis scientifically unreliable. Aravena recognizes that Sturchio cites to a peer-reviewed study as support for his method. Aravena, however, distinguishes the published, accepted study because it did not involve the use of large volumes of water, of multiple sample containers, or of multiple extractions to perform an analysis.

Aravena further explains that unlike carbon, chlorine is not measured on a compound specific basis. The effect of this is that when chlorine is measured in a water sample, the results will reflect chlorine isotope composition of *all* chlorinated organic compounds in the sample. Chlorine isotope results in a single compound, such as TCE, cannot be isolated. Given that Sturchio admits that he found other chlorine isotope-containing compounds in his samples, Plaintiffs contend that his results are unreliable.

As further evidence of Sturchio's overall unreliability as an expert, Plaintiffs point to his disregard of unfavorable facts. For example, while analyzing the chlorine isotope ratios in the samples, Sturchio also analyzed the carbon isotope ratios. This analysis showed that all but one of the ratios from the LeClercq and Mejdrech Class Area samples matched the ratios found at the Lockformer Site, which Sturchio concluded were attributable only to manufactured TCE. Sturchio recorded these ratios in a Table attached to his expert report, but although they conflicted with his chlorine isotope results, he ignored them in his discussion. Plaintiffs also charge Sturchio with dismissing unfavorable chlorine isotope ratios from two on-site wells.

In its response to Plaintiffs' claims, Honeywell asserts that Sturchio's methodology is "well known, published and peer reviewed." As support for this proposition, it explained that Sturchio's extraction methodology and the analysis of the chlorine isotope ratio were performed according to a published, peer reviewed procedure. Honeywell, however, concedes that Sturchio veered from those published procedures in using the larger sample containers. Honeywell does not rebut any of Plaintiffs' other challenges, nor does it address any of Aravena's concerns about Sturchio's methods.

Rule 702 provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand

the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may" offer an opinion on the relevant issues. FED. R. EVID. 702. The witness may only offer such an opinion if (1) the proffered testimony is "based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Id.* It is the district court's gatekeeping obligation to ensure that expert testimony is not only relevant, but reliable. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). In performing that function, courts may consider several factors, including whether the expert's "theory or technique . . . can be (and has been) tested," whether it "has been subjected to peer review and publication," whether the technique has a high "known or potential rate of error," whether there are "standards controlling the technique's operation," and whether the technique enjoys "general acceptance" within a "relevant scientific community." *Daubert*, 509 U.S. at 592-94.

Sturchio's isotope analysis method was an unprecedented variation on a peer-reviewed procedure. It was not tested or subjected to peer review or publication, it appears to sustain a high potential rate of error, and it does not enjoy general acceptance within the relevant scientific community. The unreliability of his method is compounded by his seeming disregard

of any unfavorable findings in this case. The Court finds that Sturchio's opinions do not meet the reliability requirements set forth in Rule 702 or in *Daubert*. FED. R. EVID. 702; *Daubert*, 509 U.S. at 592-94.

For the foregoing reasons, the Court grants Plaintiffs' motion to bar the testimony of Dr. Sturchio.

## CONCLUSION

For the reasons set forth above, Plaintiffs' motion to bar the trial testimony of Dr. Neil Sturchio is **GRANTED**.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Date: September 4, 2003